MATTER OF MARTINEZ

In Exclusion Proceedings

A-34145584

*Decided by Board February 4, 1976*

Since the only adverse factor against applicant, an alien commuter, is his failure to indicate in his immigrant visa application whether or not he had previously been deported and it appears from the record such failure may have been unintentional, he is granted, in exclusion proceedings, *nunc pro tunc* permission to reapply prior to receipt of his immigrant visa, where it has been in excess of 25 years since he was deported in 1950; it does not appear that he entered the United States at all from 1950 until he obtained his border crossing card in 1959; he did not work in the United States from 1950 until he was granted an immigrant visa in 1972; the continuation of his employment in this country depends upon aproval of his application; and, although he lives in Mexico with his immediate family, his mother and four brothers and sisters reside in the United States.

EXCLUDABLE: Act of 1952—Section 212(a)(17) [8 U.S.C. 1182(a)(17)]—Previously arrested and deported, no permission to apply or reapply for admission.

Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—No valid immigrant visa.

ON BEHALF OF APPLICANT: Jerald Abrams, Esquire
P.O. Drawer 989
Eagle Pass, Texas 78852

This is an appeal from a decision of an immigration judge dated August 14, 1975, finding the applicant inadmissible to the United States under sections 212(a)(17) and 212(a)(20) of the Immigration and Nationality Act, and denying the applicant's request for permission to reapply for admission to the United States as provided in section 212(a)(17) of the Act. The appeal will be sustained.

The applicant is a 52-year-old married male alien who is a native and citizen of Mexico. He is the parent of five children, the oldest of whom is a United States citizen.

In 1947, and again in 1950, the applicant was deported from the United States as an alien who lacked a valid immigrant visa. In March, 1954, the applicant applied to the district director for permission to reapply for admission after deportation. The application was denied and this decision was affirmed on December 27, 1955 on appeal to the act Regional Commissioner.

On November 19, 1959, the applicant applied for a nonresident alien's Mexican border crossing card, which was issued. On the back of the application, Form I-190, it is indicated that the applicant revealed his 1950 deportation, although no mention appears to have been made of the 1947 deportation.

In August, 1972, the applicant applied for and was granted, an immigrant visa. He was exempted from the labor certification requirements of section 212(a)(14) as the parent of a United States citizen child. On the application for the visa, Form FS-510, the applicant failed to complete one page of the form. This page included the questions found in block 41(b) concerning prior deportations. The applicant testified, and the form indicates, that the applicant was assisted by another individual in executing this application.

On November 14, 1973, the applicant executed a commuter questionnaire. The applicant's Alien Registration Receipt Card, Form I-151, bears an indication a grommet in the upper corner—that the applicant was administratively given commuter status. However, the applicant's testimony at the hearing establishes that from the time his visa was issued until he executed the commuter questionnaire, he worked in the United States while residing in Mexico with his wife and children, and thus has been a commuter since August, 1972. See *Matter of Silva*, Interim Decision No. 2457, (BIA December 4, 1975).

On April 8, 1974, the applicant was served with a notice that he was being detained for an exclusion hearing because he did not clearly appear to be entitled to enter the United States. The Service contends that the applicant's name had been posted on a "lookout" list and the applicant was stopped at the border. However, the applicant contends that at the time he was served with the notice, he had already made an entry into the United States and that he should, therefore, be in deportation proceedings.

The applicant claims that he received a "call-in" letter and that in response to this letter, he went to Eagle Pass on April 8, 1974. He claims that he went first to his sister's house in Eagle Pass for lunch, and then returned to the Service office. His sister and his niece both gave corroborating testimony.

The Service introduced a certificate of non-existence of the "call-in" letter as well as an affidavit from the immigration officer who issued the notice to the applicant. We note that the record does contain a "call-in" letter which was issued in October, 1973. Additionally, a Service officer was called as a witness and testified as to the procedures employed at the Border.

The immigration judge concluded that, taken as a whole, the evidence established that the applicant had not made an entry and was, therefore, properly in exclusion proceedings. We agree with that conclusion.

The immigration judge found the applicant's witnesses to be truthful. Nonetheless, they were not able to recall with sufficient specificity whether the events with respect to which they testified occurred on April 8, 1974 or some other date near in time. This is of particular significance when it is borne in mind that the applicant was a commuter and crossed the border daily. The Service evidence, on the other hand, tends to establish that the applicant was detained at the border and is properly in exclusion proceedings.

An immigration judge may grant an applicant permission to reapply for admission after deportation in an exclusion proceedings, *Matter of S—N—*, 6 I. & N. Dec. 73 (BIA 1954; Atty. Gen. 1954). The immigration judge denied the application essentially on the ground that the applicant had few ties in the United States and had failed to establish that he would experience hardship if the waiver were not granted.

Although the immigration judge noted the failure of the applicant to indicate his prior deportation, he did not rely on this in denying the application for permission to reapply. There is some indication in the record that the applicant claims that he told the person completing the form of his prior deportation. On the basis of this record, it appears that the applicant may not have intentionally failed to indicate his prior deportations.

Although the applicant lives in Mexico with his immediate family, his mother and four brothers and sisters reside in the United States. The applicant was employed in the United States until the exclusion proceeding was begun.

There appear to be no adverse factors against the applicant, other than the failure to indicate whether or not he had previously been deported. He did not work in the United States from 1950 until he was afforded an immigrant visa. It does not appear that he entered the United States at all from 1950 until he obtained his border crossing card in 1959. It has now been in excess of 25 years since the applicant was previously deported.

The applicant's continuation of his employment in the United States depends upon approval of his application.

On review of all these factors, we believe the applicant should be granted *nunc pro tunc* permission to reapply for admission to the United States prior to the receipt of his visa. This *nunc pro tunc* grant accordingly renders the applicant's visa valid and he therefore, is not inadmissible under section 212(a)(20) of the Act.

ORDER: The appeal is sustained.

*Further order:* The applicant is granted permission to reapply for admission to the United States *nunc pro tunc* prior to the receipt of his visa.

*Further order:* The exclusion proceedings are terminated.