# FOR PUBLICATION
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

J. Amparo Corona-Mendez,
                    *Petitioner,*

            v.

Eric Holder Jr., Attorney
General,

                    *Respondent.*

No. 08-72492

Agency No.
A75-100-704

OPINION

On Petition for Review from the
Board of Immigration Appeals

Argued and Submitted
October 14, 2009—Seattle, Washington

Filed February 3, 2010

Before: Richard D. Cudahy,* Senior Circuit Judge,
Johnnie B. Rawlinson and Consuelo M. Callahan,
Circuit Judges.

Opinion by Judge Cudahy

*The Honorable Richard D. Cudahy, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

**COUNSEL**

Antonio Salazar, Seattle, Washington, for the petitioner.

Michael F. Hertz, Carol Federighi, and Mona Maria Yousif, U.S. Department of Justice, Washington, D.C., for the Attorney General.

**OPINION**

CUDAHY, Circuit Judge:

The question presented here is whether the Board of Immigration Appeals (Board) erred in holding that the petitioner was not eligible for multiple waivers of removability and inadmissibility and thereby erred in denying petitioner's application.

**I**

Jose Amparo Corona-Mendez (Corona-Mendez), a native and citizen of Mexico, began illegally entering the United States to work in 1956, when he was about 20 years old. At the time of Corona-Mendez's hearing before the IJ in the present case, Corona-Mendez worked full-time for Mt. Vernon Nursery, and, prior to that, he worked at a dairy farm for eight years. He married Ofelia Sanchez de Corona, a lawful

permanent resident, and together they have nine children, all of whom live in the United States and most of whom have status in the United States. Corona-Mendez has eight siblings that all live in the United States with legal status.

Corona-Mendez's interactions with the United States immigration authorities began in 1993. That year, he was stopped by the police for driving under the influence. He was taken to jail and, while there, was detained by immigration officials. He appeared before an Immigration Judge (IJ) and then was removed to Mexico. He returned to the United States either in 1993 or 1994. In 1996, he applied for and received lawful permanent resident status. He filled out the application with the assistance of his wife and son and did not indicate that he had been deported. In 2003, he applied to become a naturalized citizen but again did not indicate that he had been deported.

In March 2005, the United States Department of Homeland Security issued Corona-Mendez a Notice to Appear before an IJ to answer charges that he was subject to removal because he procured a status adjustment by fraud or willful misrepresentation of a material fact.[1] In August, the DHS added two additional charges of removability because he had been ordered removed within the previous 10 years,[2] and because he was an alien in the United States in violation of the law.[3] At the hearing, Corona-Mendez conceded removability. He

[1]INA § 212(a)(6)(C)(i) provides that "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i).

[2]INA § 212(a)(9)(A)(ii) provides that any alien "who . . . departed the United States while an order of removal was outstanding, and who seeks admission within 10 years of the date of such alien's departure or removal . . . is inadmissible." 8 U.S.C. § 1182(a)(9)(A)(ii).

[3]INA § 237(a)(1)(B) provides "[a]ny alien who is present in the United States in violation of this chapter or any other law of the United States . . . is deportable." 8 U.S.C. § 1227(a)(1)(B).

argued instead that he was eligible for relief based on a combination of an I-212 waiver for a *nunc pro tunc* (retroactive) grant of permission to reapply for admission into the United States in conjunction with either (1) a waiver of deportability for fraud under INA § 237(a)(1)(H) (237(a)(1)(H) waiver), 8 U.S.C. § 1227(a)(1)(H); or (2) an adjustment of status predicated on a waiver of inadmissibility for fraud or willful misrepresentation of a material fact if the alien demonstrates extreme hardship to the alien's citizen or lawfully resident spouse or parent under INA § 212(i) (Section 212(i) waiver), 8 U.S.C. § 1182(i). Corona-Mendez contended that either of these two avenues of relief would allow him to remain in the United States by removing all of his grounds of inadmissibility based on his prior deportation and misrepresentations.

In January 2007, the IJ issued a written decision denying Corona-Mendez's application and ordering him removed to Mexico. The IJ declined to adjust status based on Corona-Mendez's eligibility for a 212(i) waiver because he had not demonstrated that his removal would result in the requisite hardship to his legal permanent resident wife. The IJ decided that, based on the "negative factors" in his case, including his multiple misrepresentations and convictions for driving under the influence, even if he were eligible for a 212(i) waiver based on extreme hardship, he should be denied the waiver as a matter of discretion. The Board affirmed the IJ's decision to deny the waiver only as a matter of discretion. Without a 212(i) waiver, the Board concluded, Corona-Mendez was ineligible for an adjustment of status and his request to reenter *nunc pro tunc* was denied because granting such relief would not completely resolve his case. As to the avenue based on the 237(a)(1)(H) waiver of fraud, the IJ found, and the Board upheld the determination, that Corona-Mendez was not otherwise admissible because of his prior deportation and therefore the 237(a)(1)(H) waiver was unavailable.

Corona-Mendez then appealed to this court, arguing that he should be able to "stack" his waivers to remove all grounds

of inadmissibility. We disagree. We therefore deny the petition for review in part and, for reasons discussed immediately below, dismiss in part for lack of jurisdiction.

## II

### A

**[1]** Our jurisdiction to review the statutory eligibility elements of a waiver of inadmissibility under Section 237(a)(1)(H) of the INA rests on 8 U.S.C. § 1252. *See San Pedro v. Ashcroft*, 395 F.3d 1156, 1157 (9th Cir. 2005). The Government contends that we lack jurisdiction to review the avenue of relief that involves Corona-Mendez's 212(i) waiver because it was denied as a matter of discretion. We agree. No court has jurisdiction to review any judgment granting relief under 212(i), or other provisions for which decision is committed to the discretion of the Attorney General or the Secretary of Homeland Security, unless review of the petition involves constitutional claims or questions of law. *See* INA § 242(a)(2)(B)(i)-(ii), 8 U.S.C. § 1252(a)(2)(B)(i)-(ii); INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D). *See also* INA § 212(i)(2), 8 U.S.C. § 1182(i)(2); *Memije v. Gonzales*, 481 F.3d 1163, 1164 (9th Cir. 2007).

### B

We review questions of law *de novo*, except to the extent that deference is owed to the Board's interpretation of the governing statutes and regulations. *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1156-57 (9th Cir. 2008) (noting that, if a three-member panel of the Board publishes a decision interpreting a provision of the INA, that decision is accorded *Chevron* deference within the Board's area of expertise); *Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1126-27 (9th Cir. 2007); *Salviejo-Fernandez v. Gonzales*, 455 F.3d 1063, 1065 (9th Cir. 2006).

**C**

We examine Corona-Mendez's avenue of relief based on a 237(a)(1)(H) waiver in conjunction with *nunc pro tunc*, or retroactive, permission to reapply for readmission (*nunc pro tunc* permission). Because the Board held that it was unable, as a matter of law, to grant a 237(a)(1)(H) waiver, it held that it was unable to grant *nunc pro tunc* permission as well, regardless whether the IJ should have exercised its discretion to do so.

To reenter the United States after his 1993 deportation, Corona-Mendez should have asked permission of the Attorney General; failure to do so rendered him inadmissible. INA § 212(a)(9)(A)(ii); 8 U.S.C. § 1182(a)(9)(A)(ii) (an alien who has been ordered removed who seeks readmission within 10 years of the date of departure is inadmissible unless the Attorney General has consented to the alien's request to reapply for admission). The Attorney General's grant of *nunc pro tunc* permission could have removed this defect in Corona-Mendez's application for status, had it been the only defect. *In re Garcia-Linares*, 21 I & N Dec. 254, 258 (BIA 1996) (en banc).

**[2]** Corona-Mendez urges us to extend the reasoning of another Board decision, *Matter of Sosa-Hernandez*, 20 I&N Dec. 758 (BIA 1993) and hold that a properly granted 237(a)(1)(H) waiver would eliminate Corona-Mendez's illegal entry in 1993 and therefore, by a legal fiction, make true his claim in his legal permanent resident application that he had not been deported. To qualify for the 237(a)(1)(H) waiver, an alien must be, apart from the fraud or misrepresentation, "otherwise admissible," absent the application of some exceptions that do not apply here. 8 U.S.C. § 1227(a)(1)(H)(i)(II); *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 31-32 (1996) (explaining that "otherwise admissible" means not excludable on some ground other than the entry fraud);

*Chow v. INS*, 641 F.2d 1384, 1389 (9th Cir. 1981) (interpreting the predecessor statute to 237(a)(1)(H), section 241(f)).

The *Sosa-Hernandez* case is distinguishable from the present case because of the order in which Mr. Sosa-Hernandez received his grounds of inadmissibility. In *Sosa-Hernandez*, the petitioner, who entered as a lawful permanent resident but had a fraudulent visa, was later convicted of a drug offense. 20 I. & N. Dec. at 758. He was therefore excludable on the grounds of both the fraudulent visa and the conviction. The IJ issued him a 241(f) waiver but concluded that, because the petitioner became a lawful permanent resident only at the time the 241(f) waiver was issued, he did not have the seven consecutive years of lawful domicile necessary to apply for relief to waive his deportation for the drug conviction. *Id.* at 759-60. The Board reversed and held that, because the 241(f) waiver had a retroactive effect, the petitioner became a lawful permanent resident at the time of his formerly invalid entry, thus giving him the seven years to make him eligible to apply for relief. The Board explained that the effect of a 241(f) waiver is not to waive deportability alone, but also to waive the underlying fraud or misrepresentation. *Id.* at 760-61; *see also Reid v. INS*, 420 U.S. 619, 630 (1975); *Cacho v. INS*, 547 F.2d 1057, 1061 (9th Cir. 1976). The Board noted that, *at the time of his fraudulent entry*, Sosa-Hernandez had not yet been convicted of the drug offense. Consequently, the 241(f) waiver removed the only ground of inadmissibility at the time of entry. *Sosa-Hernandez*, 20 I. & N. at 763. After the 241(f) waiver, Sosa-Hernandez was statutorily eligible for a 212(i) waiver, which was then granted at the discretion of the IJ and deportation proceedings were terminated. *Id.*

**[3]** We hold that 237(a)(1)(H) requires that the court consider whether the petitioner is inadmissible on more than one ground at the time of the fraud the petitioner seeks waived. In *Sosa-Hernandez*, only one ground of inadmissibility existed at the time of the fraud—an invalid entry document. In contrast, two grounds of inadmissibility existed for Corona-Mendez at

the time of his fraudulent application for adjustment of status —the fraud itself and his improper return to the United States after deportation, without permission to reenter. 8 U.S.C. § 1227(a)(1)(H). Since 237(a)(1)(H) relief is only available where it will render the petitioner "otherwise admissible" as of the time the fraud it excuses transpired, the Board properly determined that the 237(a)(1)(H) waiver was statutorily unavailable to Corona-Mendez.

**[4]** Similarly, the Board properly held that it was unable to grant *nunc pro tunc* permission because the 237(a)(1)(H) waiver was unavailable. The Board typically allows *nunc pro tunc* relief in cases either in which the petitioner requests *nunc pro tunc* permission or in which the Board desires to apply the law as it existed at the time of the violation. *See, e.g.*, *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 910 (6th Cir. 2008). There is no specific provision in the immigration laws that authorizes *nunc pro tunc* permission to cure an alien's failure to obtain such permission prior to reentry after deportation—it is an administrative practice derived from the Board's general powers. *In re Garcia-Linares*, 21 I. & N. Dec. at 257; *In the Matter of S– N–*, 6 I. & N. Dec. 73, 74 (BIA 1954) (collecting decisions). The Board grants *nunc pro tunc* permission only in two circumstances: (1) when the only ground of deportability or inadmissibility would thereby be eliminated and (2) when the alien would receive a grant of adjustment of status in conjunction with the grant of any appropriate waivers of inadmissibility. *In re Garcia-Linares*, 21 I. & N. Dec. at 258; *Matter of Roman*, 19 I. & N. Dec. 855, 859 (BIA 1988); *Matter of Ng*, 17 I. & N. Dec. 63, 64 (BIA 1979); *see also Romero-Rodriguez v. Gonzales*, 488 F.3d 672, 678-79 (5th Cir. 2007) (explaining that the Board may exercise its discretion to grant "a form of statutory nunc pro tunc" in the two situations outlined in *Garcia-Linares*); *Perez-Rodriguez v. INS*, 3 F.3d 1074, 1079-80 (7th Cir. 1993) (applying *Chevron* deference to uphold this interpretation of the BIA's powers).

**[5]** Because the Board does not grant *nunc pro tunc* permission to reapply if the petitioner is deportable based on multiple grounds of inadmissibility, it was denied here. In *In re Garcia-Linares*, the petitioner was charged with deportability because he was convicted of an aggravated felony, since he had not received advanced permission to reapply for reentry and because he did not possess a valid entry document. 21 I. & N. Dec. at 257. The Board held that the petitioner could not request *nunc pro tunc* permission because doing so would not eliminate all established grounds of deportability, including the deportability based on Garcia-Linares' conviction for an aggravated felony. *Id.* at 258. Likewise here, even if the Board granted *nunc pro tunc* permission to reapply for admission to waive Corona-Mendez's inadmissibility due to his unlawful re-entry after deportation, he would remain deportable because he committed fraud in his applications for lawful permanent resident status and for naturalization. Pursuant to the Board's administrative practice, permission to reapply was properly denied because the 237(a)(1)(H) waiver was deemed unavailable.[4]

**[6]** Corona-Mendez also argues that his grounds of deportation arise out of one event. Therefore, he argues, his case is distinguishable from *Garcia-Linares*, and his deportation should be cancelled. He reasons that the failure to disclose his deportation in his permanent resident status application arises out of his 1993 deportation and therefore both the deportation and the fraud on the applications are the same event. This argument is unpersuasive. As explained above, Corona-Mendez's deportation and illegal return to the United States are temporally and legally distinguishable from his subsequent fraud on his applications for lawful permanent resident

---

[4]Neither party argues that the Board's practice is an impermissible interpretation of its authority, either statutory or regulatory, and we have no authority to require the Board to extend its discretionary administrative practice. Of course, the Board may do so if it determines such an extension to be appropriate.

status and naturalization. They therefore give rise to separate grounds of inadmissibility that render the *nunc pro tunc* permission and the 237(a)(1)(H) waiver inapplicable.

Accordingly, the petition for review is **DENIED**.